UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

THOMAS HOWARD,

                                        Petitioner,

v.                                                      9:06-CV-0982
                                                        (GTS/GHL)

RICHARD POTTER, Acting Superintendent,
                                        Respondent.
_____

APPEARANCES:                                    OF COUNSEL:

THOMAS HOWARD
  Petitioner, *Pro Se*
Correctional Facility
Great Meadow Correctional Facility
PO Box 51
Comstock, NY 12821-0051

HON. ANDREW M. CUOMO                            THOMAS B. LITSKY, ESQ.
Attorney General for the State of New York      Assistant Attorney General
  Counsel for Respondent
120 Broadway
New York, NY 10271

GEORGE H. LOWE, UNITED STATES MAGISTRATE JUDGE

## REPORT-RECOMMENDATION & ORDER[1]

        Petitioner Thomas Howard, *pro se*, is an inmate in the custody of the New York State

Department of Correctional Services.  After a jury trial in New York State Supreme Court, County

of Albany, Petitioner was found guilty of sodomy in the first degree (two counts), attempted sodomy

in the first degree (one count), sexual abuse in the first degree (four counts), and endangering the

_____

        [1]  This action has been referred to the undersigned by District Court Judge Glenn T. Suddaby for a report and
recommendation pursuant to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3(c).

welfare of a child (four counts).[2]  State Court Records, Ex. K.  He was sentenced to an aggregate term of imprisonment of forty years with five years of post-release supervision.  State Court Records, Ex. L.  The Appellate Division, Third Department affirmed this conviction, and the Court of Appeals denied Petitioner leave to appeal on August 30, 2005.  *People v. Howard*, 20 A.D.3D 768 (N.Y. App. Div. 2005), *leave denied* 5 N.Y.3d 806 (2005).

Petitioner filed an application for writ of error coram nobis, which was denied by the Appellate Division, Third Department on March 29, 2007.  State Court Records, Exs. O, Q, R.  The Court of Appeals denied him leave to appeal on August 30, 2007.  *Id.* at Ex. T.

Petitioner has petitioned this Court for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254.  Dkt. Nos. 1, 24.  His amended petition sets forth the following grounds: (1) The evidence adduced at trial was insufficient to support the conviction; (2) The prosecutor improperly introduced evidence of Petitioner's prior bad acts; and (3) Appellate counsel violated Petitioner's right to effective assistance of counsel.  Dkt. No. 24.  For the reasons which follow, I recommend that the petition be denied.

## I.  Background

In late 1999, Petitioner lived in the upstairs apartment of a two-apartment dwelling in Albany, New York.  State Court Records, Ex. K, Trial Transcript ("TT") at 85-86, 106.  Petitioner lived there with his mother and siblings, who included two younger brothers, JJM and AM.  *Id.* at 87, 106.

---

[2]     The jury also found Petitioner guilty of six counts of second-degree sodomy.  State Court Records, Ex. K.  However, the trial court dismissed the six counts because Petitioner's age, an element of the offense, was not established during trial.  *Id.* at 383-84.

JJM, who was eight-years old at the time of the trial in October of 2001,[3] testified that

Petitioner was "mean" to him.  TT at 161, 165.  JJM explained that Petitioner put Petitioner's penis

in JJM's mouth, and put Petitioner's penis between JJM's "butt cheeks."  *Id.* at 165-66.  JJM also

testified that Petitioner made JJM touch Petitioner's penis with JJM's hand and with JJM's penis.

*Id.* at 167-68.  JJM further testified that Petitioner told JJM that Petitioner would kill him if JJM

told their mother.  *Id.* at 169.

AM, who was ten-years old at the time of the trial, also testified that Petitioner was mean to

him.  TT at 141, 165.  AM explained that on one occasion, Petitioner "took his hand and rubbed

[AM's] penis . . . [and AM's] butt."  *Id.* at 148.  AM stated that Petitioner told AM that if he told

anyone, Petitioner "would kill" him.  *Id.* at 149.  AM also explained that on another occasion,

Petitioner "tr[ied] to stick his penis in [AM's] butt."  *Id.* at 146.  At that point, Petitioner was kicked

out of the upstairs apartment by their mother.  *Id.*

Petitioner moved into the downstairs apartment.  TT at 84-86.  The downstairs apartment

was occupied by RM and RM's three children, which included JLM.  *Id.*  She stated that she

allowed Petitioner to move in the apartment because "there was so much conflict between him and

his mother."  *Id.* at 99-100.

JLM, who was twelve-years old at the time of the trial, testified that Petitioner "made him"

touch Petitioner's penis and that Petitioner touched JLM's penis.  TT at 103, 108-09.  JLM also

testified that Petitioner "would hump [him] between [his] legs."  *Id.* at 109.  JLM stated that "when

he got done, white stuff would be on [his] leg."  *Id.* at 110.  JLM also stated that "once or twice

---

[3]      After questioning JJM, the trial court concluded that JJM could be sworn under oath.
TT at 82-83.

[Petitioner] put [his penis] in [JLM's] butt, but it hurt so [JLM] told him to take it out." *Id.* JLM also stated that on at least six occasions, Petitioner "would make [JLM] move his penis up and down" and Petitioner would do the same to JLM's penis. *Id.* at 110-11. JLM stated that Petitioner told him not to tell anyone. *Id.* at 114.

In March 2000, Petitioner's mother was hospitalized. TT at 232. During that time, AB, who is the brother of AM, JJM, and Petitioner, watched the children at his mother's apartment. *Id.* at 232-33. AB testified that he never saw Petitioner abuse their brothers. *Id.* at 234. AB also testified that none of his brothers reported to him that they were abused by Petitioner. *Id.*

However, AB also stated that he tried not to leave Petitioner alone with children because he "kn[ew] his past history." TT at 237. AB admitted that he and Petitioner fought about Petitioner hanging out with young boys all of the time. *Id.* at 237-38. AB also admitted that Petitioner wanted to have young boys spend the night all of the time. *Id.* at 238. AB further admitted that he tried to be responsible and prevent that from occurring. *Id.*

Petitioner's mother passed away on April 12, 2000. TT at 89, 233. Following her death, the "younger children" were placed in the custody of Social Services. *Id.* at 94.

Petitioner subsequently moved into a house that was occupied by DG, DG's siblings, and DG's mother. TT at 126-27. DG, who was thirteen-years old at the time of the trial, explained that he met Petitioner through AM, who was his friend. *Id.* at 124, 126. He stated that he "used to go to [Petitioner's] house to see [AM]." *Id.* DG testified that after Petitioner's mother died, DG's mother "felt sorry" for Petitioner and therefore allowed Petitioner to move in her house upon Petitioner's request. *Id.* at 134.

DG testified that after Petitioner moved in, on three or four occasions, Petitioner put his

4

penis between DG's "butt cheeks."  TT at 128-29, 135.  DG stated that he told Petitioner to stop and when DG "tried" to fight back, Petitioner "threw [him] on the floor."  *Id.* at 127, 130.  DG stated that Petitioner told him that he would kill him if he told anyone what happened.  *Id.* at 130.  DG further testified that on one occasion while Petitioner still lived in Petitioner's mother's apartment, Petitioner made DG touch Petitioner's penis.  *Id.* at 131.

The Child Protective Services Unit of the Albany Police Department was notified of Petitioner's contact with DG.  TT at 191-92.  On September 14 and 19, 2000, Detective Patricia Farrell spoke with DG.  *Id.* at 181-82, 184.  Detective Farrell subsequently spoke with JLM, JJM, and AM.  *Id.* at 184, 187, 188-90.  Thereafter, Petitioner was arrested.

Dr. Richard M. Hamill, a psychologist certified to practice in the State of New York, testified that he has been recognized in nine counties in New York as an expert witness for the purpose of explaining child sexual abuse accommodation syndrome and associated behaviors.  TT at 204-05, 214.  Dr. Hamill indicated that this syndrome explains how repeated acts of sexual abuse affect children.  *Id.* at 213.

Dr. Hamill stated that children who have been abused often have been persuaded to keep the abuse secret by threats, coercion, and other strategies.  TT at 217.  He also stated that based on his work experience, children "become much more conflicted" if the relationship between the perpetrator and child is "one that is a well-developed relationship, [such as] a family friend or a family member."  *Id.* at 221.  Dr. Hamill testified that he never met with any individuals in this case because he was never asked to do so.  *Id.* at 216-17.

## II.  Discussion

**A.     Applicable Standard of Review**

5

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241(c) (2006).  Relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *DiGuglielmo v. Smith*, 366 F.3d 130, 136-137 (2d Cir. 2004).   Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim that was adjudicated on the merits in state court proceedings unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1) (2006); *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006); *Campbell v. Burgess*, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).

A decision is adjudicated "on the merits" when it finally resolves the claim, with *res judicata* effect, based on substantive rather than procedural grounds.  *Sellan v. Kuhlman*, 261 F.3d 303, 311-12 (2d Cir. 2001).  This is so "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Id.* at 312.  To determine whether a state court has adjudicated a claim "on the merits," a federal habeas court must examine three "clues" to classify the state court decision as either (1) resting primarily on federal law or interwoven with federal law; or (2) resting primarily on state procedural law.  *Jimenez v. Walker*, 458 F.3d 130, 145 (2d Cir. 2006).  "Absent a clear and express statement of reliance on a state procedural bar," decisions in the first category are deemed to have been made "on the merits" of the federal claim.  *Id.*

A decision "on the merits" is "contrary to ... clearly established federal law" when it is "either contrary to Supreme Court precedent on a question of law or ... opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." *Johnson v. West*, No. 9:04-CV-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007) (quoting *Williams v. Taylor*, 529 U.S. 362,

6

405-406 (2000)).  A state court "unreasonably applies" federal law when the state court correctly

identifies the governing legal rule in a particular case but applies the rule to the facts in an

"objectively unreasonable" manner.  *Johnson*, 2007 WL 952058 at *2 (quoting *Lockyer v. Andrade*,

538 U.S. 63, 75 (2003)); *see Brisco v. Ercole*, 565 F.3d 80, 89 (2d Cir. 2009) (holding that the state

court reasonably applied clearly established federal law).  Although "[s]ome increment of

incorrectness beyond error is required" in order to grant a federal *habeas* application, that increment

"need not be great; otherwise, *habeas* relief would be limited to state court decisions 'so far off the

mark as to suggest judicial incompetence.'"  *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000);

*see also Hawkins v. Costello*, 460 F.3d 238, 243 (2d Cir. 2006).  The state court's determination of a

factual issue is presumed to be correct, and the petitioner has the burden of rebutting that

presumption by clear and convincing evidence.  28 U.S.C. § 2254 (e)(1) (2006); *DeBerry v.

Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005), *cert. denied* 546 U.S. 884 (2005); *Boyette v. Lefevre*,

246 F.3d 76, 88 (2d Cir. 2001).

**B.    Sufficiency of the Evidence**

Petitioner argues that the evidence was insufficient to support the guilty verdict.  Dkt. No. 24

at 5.  Respondent argues that this claim is without merit.  Dkt. No. 32 at 13-16.

A challenge to the sufficiency of the evidence, in contrast to a claim regarding the weight of

the evidence, is amenable to federal *habeas* review.  *See Ponnapula v. Spitzer*, 297 F.3d 172, 179

(2d Cir. 2002) (citing *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).  The Due Process

Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction

except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime(s) with

which he is charged.  *See Fiore v. White*, 531 U.S. 225, 228-29 (2001); *Jackson v. Virginia*, 443

U.S. 307, 315 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).  This inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit."  *Herrera v. Collins*, 506 U.S. 390, 402 (1993).  A *habeas* petitioner claiming that there was insufficient evidence supporting the conviction is entitled to relief under 28 U.S.C. § 2254 only if it is found "that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  *Jackson*, 443 U.S. at 324; *Schlup v. Delo*, 513 U.S. 298, 323 n. 38 (1995).  The "assessment of the credibility of witnesses is generally beyond the scope of review."  *Schlup*, 513 U.S. at 330 (1995).  The reviewing court is required to consider the evidence in the light most favorable to the prosecution, and draw all inferences in its favor.  *Jackson*, 443 U.S. at 319.  Thus, the relevant inquiry in this regard is "whether the evidence adduced at trial could support any rational determination of guilty beyond a reasonable doubt."  *United States v. Powell*, 469 U.S. 57, 67 (1984) (citing *Jackson* ) (other citations omitted).

    "When considering the sufficiency of the evidence of a state conviction, '[a] federal court must look to state law to determine the elements of the crime.'"  *Ponnapula*, 297 F.3d at 179 (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999)); *see also Fama v. Comm'r of Cor. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citing *Quartararo*).  Therefore, this Court must consider the elements the prosecutor was required to prove beyond a reasonable doubt to properly convict Petitioner.

    At issue in this case are sections 130.50(3) (Sodomy in the First Degree), 110.00 and 130.50(3) (Attempted Sodomy in the First Degree), 130.65(3) (Sexual Abuse in the First Degree), and 260.10(1) (Endangering the Welfare of a Child).

At the time of the offenses, section 130.50(3) provided that a person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse[4] with another person who is less than eleven years old.  McKinney's Penal Law § 130.50(3).

Section 110.00 provided that a person is guilty of an attempt to commit a crime when, with intent to commit a crime, he engages in conduct which tends to effect the commission of such crime.  McKinney's Penal Law § 110.00.

Section 130.65(3) provided that a person is guilty of sexual abuse in the first degree when he subjects another person to sexual contact[5] when the other person is less than eleven years old.  McKinney's Penal Law § 130.65(3).

Section 260.10(1) provided that a person is guilty of endangering the welfare of a child when he knowingly acts in a manner likely to be injurious to the physical, mental or moral welfare of a child less than seventeen years old or directs or authorizes such child to engage in an occupation involving a substantial risk of danger to his life or health.  McKinney's Penal Law § 260.10(1).

Based on the facts and circumstances of this case, a trier of fact could rationally find beyond a reasonable doubt that Petitioner was guilty of the offenses of which he was convicted.

Regarding the two counts of first-degree sodomy, JJM testified that when he was less than eleven years old, Petitioner put his penis in JJM's mouth, and also "put his penis between [JJM's]

_____

[4]       Deviate sexual intercourse is defined as "sexual conduct between persons not married to each other consisting of contact between the penis and the anus, the mouth and penis, or the mouth and the vulva."  McKinney's Penal Law § 130.00(2).

[5]       Sexual contact is defined as "any touching of the sexual or other intimate parts of a person not married to the actor for the purpose of gratifying sexual desire of either party.  It includes the touching of the actor by the victim, as well as the touching of the victim by the actor, whether directly or through clothing."  McKinney's Penal Law § 130.00(3).

9

butt cheeks." TT at 161, 165-66.

Regarding the one count of attempted first-degree sodomy, AM testified that when he was less than eleven years old, Petitioner pulled down AM's pants and "tr[ied] to stick his penis in [AM's] butt." TT at 141, 146-47.

Regarding the four counts of first-degree sexual abuse: (1) AM testified that Petitioner placed his hand under AM's clothes and rubbed his penis, TT at 148; (2) AM testified that Petitioner placed his hand under AM's clothes and touched AM's butt, *Id.*; (3) JJM testified that Petitioner took JJM's hand and placed it on Petitioner's penis, *Id.* at 167; and (4) JJM testified that Petitioner touched JJM's penis with Petitioner's own penis. *Id.* at 168.

Regarding the four counts of endangering the welfare of a child: (1) AM testified that Petitioner told AM that he would kill AM if AM told anyone about the abuse, TT at 148-49; (2) JJM testified that Petitioner told him that he would kill JJM if JJM told his mother about the abuse, *Id.* at 169; (3) JLM testified that when he was younger than seventeen-years old, Petitioner made him touch Petitioner's penis and that Petitioner touched his penis, *Id.* at 103, 108-11; and (4) DG testified that when he was younger than seventeen years old, Petitioner touched DG's penis and Petitioner made DG touch Petitioner's penis. *Id.* at 127, 131.

While Petitioner points to a lack of supporting medical evidence, (Dkt. No. 36 at p. 7), the testimony of the victims was sufficient to establish Petitioner's guilt beyond a reasonable doubt. *See Roe v. Senkowski*, No. 9:98-CV-0656, 2001 WL 1860884, at *2-4 (N.D.N.Y. Feb. 20, 2001) (Sharpe, M.J.) (finding that testimony of child victim, standing alone, was sufficient to support a conviction); *Arhin v. New York*, No. 94 Civ. 6921, 1995 WL 672488, at *1 (S.D.N.Y. Nov. 9, 1995) (finding that no corroborating evidence was required to support a conviction of rape by forcible

compulsion).  Thus, Petitioner's claim is unavailing.

The Appellate Division similarly rejected Petitioner's claim as follows:

> Initially, we reject defendant's claim that his convictions were not supported by legally sufficient evidence.  Viewed in a light most favorable to the People, the victims' detailed accounts, together with the testimony of the detective who investigated the allegations of abuse, established every element of the crimes charged beyond a reasonable doubt.  Defendant's contention that the victims' testimony required corroboration is without merit inasmuch as each victim was a competent witness who provided testimony under oath.
>
> Moreover, weighing the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony, we cannot conclude that the jury failed to accord appropriate weight to the evidence before it.  Although defendant asserts that the young age of the victims rendered their testimony unreliable, his challenges amount to mere attacks upon the credibility of these witnesses-a determination which the jury properly resolved.

*Howard*, 20 A.D.3D at 768-69 (internal citations and quotations omitted).

The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim.  In light of the foregoing, the petition on this ground should be denied.

## C.     Evidence of Prior Bad Acts

### 1.     DG's Testimony

Petitioner argues that he was denied a fair trial due to the People's use of prior bad acts in their direct case.  Dkt. No. 24 at p. 6.  Respondent argues that this claim is without merit because the only admissible prior bad act was never presented to the jury.  Dkt. No. 32 at 18.

Under New York and federal law, evidence of prior crimes or bad acts is admissible where it is relevant to an issue other than the defendant's propensity to commit the crime with which he is charged.  New York and federal courts frequently admit evidence of prior bad acts, including

11

uncharged crimes, "as background material and to 'complete the narrative of events.'"  *Charles v. Fischer*, 516 F. Supp. 2d 210, 217 (E.D.N.Y. Sept. 27, 2007) (quoting *People v. Till*, 87 N.Y.2d 835, 836-37, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995) ("[S]uch evidence may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode'")); *see also United States v. Gonzales*, 110 F.3d 936, 942 (2d Cir. 1997) (holding that evidence of bad acts is admissible under Federal Rule of Evidence 404(b) if it is "'necessary to complete the story of the crime on trial'") (citation omitted); *Yapor v. Mazzuca*, No. 04 Civ. 7966, 2005 WL 894918, *17 (S.D.N.Y. Apr. 19, 2005) (noting that "the fact of [petitioner's] wife's arrest on a drug charge completed the narrative and the trial court was within its discretion under New York law to admit it") (citations omitted), *report and recommendation adopted*, 2005 WL 1845089 (S.D.N.Y. Aug. 3, 2005).  The probative value of such evidence, however, must outweigh its potential for prejudice.  *See Ballard v. Walker*, 772 F. Supp. 1335, 1342 (E.D.N.Y. 1991) (citing *People v. Ely*, 68 N.Y.2d 520, 536, 503 N.E.2d at 92 (1986)).

Before trial, the People made an application to admit evidence regarding more than a dozen prior bad acts under *People v. Molineux*, 168 N.Y. 264 (N.Y. 1901).  State Court Records, Ex. E, at pp. 61-68.  The Supreme Court denied the application in part, finding that the People could introduce evidence that related to a prior sexual act Petitioner committed against DG in order to complete the narrative and explain the relationship between Petitioner and DG.  *Id.* at Ex. J at p. 4.

At trial, DG never testified about the prior incident.  *See* TT at 123-40.  Moreover, Petitioner points to no place in the record indicating that DG provided such testimony.  Therefore, Petitioner's claim that he was denied a fair trial due to Respondent's improper use of prior bad acts is

unavailing.

Similarly, the Appellate Division found, "The People did not . . . elicit this evidence during the direct examination of the victim or at any time during the trial." *Howard*, 20 A.D.3d at 768. The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in rejecting Petitioner's claim. In light of the foregoing, the petition on this ground should be denied.

### 2. Other Witnesses' Testimony

In his reply papers, Petitioner claims that evidence regarding "other bad acts/uncharged crime(s)" was introduced through the testimony of Detective Farrell, Dr. Hamill, and JLM at trial. Dkt. No. 36 at pp. 1-6.

An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively. Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the highest state court in the same factual and legal context in which it appears in the habeas petition. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); *Fama v. Comm'r of Corr. Servcs.*, 235 F.3d 804, 808 (2d Cir. 2000); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)); *Daye v. Atty. Gen. of New York*, 696 F.2d 186, 191 (2d Cir. 1982).

"To establish that a federal claim was raised in state court, a petitioner must, in the state courts, (1) have relied on federal case law employing federal constitutional analysis; (2) relied on

factually similar state cases employing federal constitutional analysis; (3) asserted the claim "in terms so particular as to call to mind a specific right protected by the Constitution"; or (4) alleged a set of facts well within ordinary constitutional litigation." *Stone v. Stinson*, 121 F. Supp. 2d 226, 236 (W.D.N.Y. 2000)(citing *Daye*, 696 F.2d at 194).  The requirement that the state court have been given a reasonable opportunity to pass on the federal habeas claim is satisfied if the legal basis of the claim made in state court was the "substantial equivalent" of that of the habeas claim.  *Picard*, 404 U.S. at 278; *Daye*, 696 F.2d at 189-90.  However, where no real avenue remains by which the claim could be raised, a claim is deemed exhausted.  *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

On direct appeal, Petitioner made no argument asserting that "other bad acts/uncharged crime(s)" were improperly introduced at trial through the testimony of Detective Farrell, Dr. Hamill, or JLM.  *See* State Court Records, Ex. A.  Thus, Petitioner has not fairly presented his current argument to the state courts.  Moreover, there is no longer a state court in which Petitioner can raise his current argument.  He cannot present the argument to the Court of Appeals in the future because he is entitled to only one leave application.  Further, raising this argument in a C.P.L. § 440.10 motion would be futile because Petitioner failed to raise this argument on direct appeal.  C.P.L. § 440.10(2)(c) bars collateral proceedings when a criminal defendant has failed to raise the grounds on direct appeal.  Thus, since no remaining avenue exists in which Petitioner could raise this claim, it is deemed exhausted but procedurally defaulted.  *Coleman v. United States*, 501 U.S. 722, 732 (1991); *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001); *Spence v. Superintendent, Great Meadow Corr. Fac.*, 219 F.3d 162, 170 (2d Cir. 2000).

This Court may review this claim only if Petitioner demonstrates cause for the default and

resulting prejudice, or that the failure of the federal court to review the claim will result in a

"fundamental miscarriage of justice" i.e., that he is innocent.  *Calderon v. Thompson*, 523 U.S. 538,

559 (1998); *Coleman*, 501 U.S. at 748-750.  To establish "cause" sufficient to excuse a procedural

default, a petitioner must show that some objective external factor impeded his or her ability to

comply with the relevant procedural rule.  *Coleman*, 501 U.S. at 753, *Restrepo v. Kelly*, 178 F.3d

634, 639 (2d Cir. 1999).  When a petitioner has failed to establish adequate cause for his procedural

default, the court need not determine whether he suffered prejudice, since federal habeas relief is

generally unavailable as to procedurally defaulted claims unless both cause and prejudice are

demonstrated.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, No. 03-CV-0461,

2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006)(McCurn, S.J.).

Here, Petitioner fails to show that some objective external factor impeded his ability to

comply with the relevant procedural rule.  Thus, Petitioner has not established cause for the default.

Petitioner also fails to show that a fundamental miscarriage of justice will result from no federal

review of the claim.  Accordingly, Petitioner's claim should be denied.

**D.**      **Effective Assistance of Appellate Counsel**

In his amended petition, Petitioner states that his appellate counsel provided ineffective

assistance by raising meritless issues and failing to raise meritorious issues.  Dkt. No. 24 at p. 8.

Liberally construing Petitioner's claim,[6] he contends that the trial court omitted an element from the

charge, namely that the defendant must be eighteen years or older in order to commit Sodomy in the

First Degree (Penal Law § 130.50(3)) and Attempted Sodomy in the First Degree (Penal Law §§ 110

---

[6]      Petitioner failed to elaborate on this claim in his amended petition and in his reply
papers.  *See* Dkt. Nos. 24, 36.  Therefore, the Court referred to his application for writ of error
coram nobis.  State Court Records, Exs. O, Q.

15

and 130.50(3)).  State Court Records, Ex. O at pp. 9-20.  He claims that defense counsel should

have objected and that therefore appellate counsel should have pointed out trial counsel's failure.

*Id.*

Respondent argues that Petitioner's claim should be denied because there was no

requirement that the People prove Petitioner's age; therefore trial counsel had no basis to object.

Dkt. No. 32 at p. 22.  Respondent accordingly argues that "appellate counsel was not ineffective for

failing to raise the meritless argument that trial counsel was ineffective."  *Id.*

The Sixth Amendment to the United States Constitution provides that: "[i]n all criminal

prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence."

U.S. Const. amend. VI.  To establish a violation of this right to the effective assistance of counsel, a

habeas petitioner must show both: (1) that counsel's representation fell below an objective standard

of reasonableness, measured in the light of prevailing professional norms; and (2) resulting

prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the

outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668,

688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims

of ineffective assistance of counsel" were established in *Strickland*.).[7]  There is a strong presumption

that counsel's conduct fell within the wide range of reasonable assistance and that counsel's actions

constituted sound trial strategy under the circumstances.  *Cuevas v. Henderson*, 801 F.2d 586,

589-90 (2d Cir. 1986).

The *Strickland* standard for determining the effectiveness of trial counsel also applies to

---

[7]        In *Williams v. Taylor*, the Supreme Court declared that "the rule set forth in
*Strickland* qualifies as "clearly established Federal law [.]"  *Williams*, 529 U.S. 362, 391 (2000).

claims of ineffective assistance of appellate counsel.  *See e.g. Holmes v. Bartlett*, 810 F. Supp. 550,

560-61 (S.D.N.Y. 1993).  Clearly established federal law holds that appellate counsel does not have

a duty to raise every colorable claim on appeal and, in fact, can use his or her professional judgment

to determine which claims represent the best opportunities for obtaining a reversal of a conviction.

*Jones v. Barnes*, 463 U.S. 745, 751-53 (1983).  The failure to raise a meritless argument does not

rise to the level of ineffective assistance.  *United States v. Kirsh*, 54 F.3d 1062, 1071-72 (2d Cir.

1995), *cert. denied* 516 U.S. 927 (1995).

> At the time Petitioner committed the offense, Penal Law § 130.50 provided as follows:
>
> A person is guilty of sodomy in the first degree when he engages in deviate sexual intercourse with another person:
>
> 1. By forcible compulsion; or
> 2. Who is incapable of consent by reason of being physically helpless; or
> 3. Who is less than eleven years old.

McKinney's Penal Law § 130.50.

Petitioner was charged under § 130.50(3), which only requires that the victim be less than

eleven years old.[8]  McKinney's Penal Law § 130.50(3).  There was no requirement that the People

prove that Petitioner was eighteen years or older.  Thus, defense counsel had no basis to object to

the jury charge.  Accordingly, appellate counsel had no reason to argue that trial counsel erred in

this regard.  In light of the foregoing, appellate counsel was not ineffective for failing to raise the

meritless argument that trial counsel was ineffective.  *See Aparicio v. Artuz*, 269 F.3d 78, 99 (2d

Cir. 2001) (noting that the "failure to include a meritless argument does not fall outside the 'wide

range of professionally competent assistance' to which [a] Petitioner was entitled"); *Kirsh*, 54 F.3d

------

[8]     JJM and AM testified that they were less than eleven years old when the incidents occurred.  TT at 141, 146, 161, 166.

17

at 1071 (failure to make a meritless argument does not rise to the level of ineffective assistance).

The Appellate Division similarly rejected Petitioner's claim.  State Court Records at Ex. R.
The Appellate Division did not act contrary to or unreasonably apply Supreme Court precedent in so
finding.  In light of the foregoing, Petitioner's claim should be denied.

**WHEREFORE**, based upon the foregoing, it is hereby

**RECOMMENDED**, that the amended petition for a writ of *habeas corpus* (Dkt. No. 24) be
**DENIED** and **DISMISSED**.  Furthermore, I find that Petitioner has not made a "substantial
showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2) ("A certificate of
appealability may issue ... only if the applicant has made a substantial showing of the denial of a
constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d
Cir. 2000).  Therefore, I recommend that no certificate of appealability issue with respect to any of
Petitioner's claims; and it is further

**ORDERED** that the Clerk serve copies of the electronically-available-only opinions cited
herein on Petitioner.[9]

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written
objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

<u>**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE
APPELLATE REVIEW**</u>.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary
of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P.

---

[9]   Those decisions include *Johnson v. West*, No. 9:04-CV-751, 2007 WL 952058
(N.D.N.Y. Mar. 29, 2007); *Roe v. Senkowski*, No. 9:98-CV-0656, 2001 WL 1860884 (N.D.N.Y.
Feb. 20, 2001); *Arhin v. New York*, No. 94 Civ. 6921, 1995 WL 672488 (S.D.N.Y. Nov. 9, 1995);
*Yapor v. Mazzuca*, No. 04 Civ. 7966, 2005 WL 894918 (S.D.N.Y. Apr. 19, 2005); and *Long v.
Lord*, No. 03-CV-0461, 2006 WL 1977435 (N.D.N.Y. Mar. 21, 2006).

18

72, 6(a), 6(e).

Dated:  August 31, 2009
         Syracuse, New York

George H. Lowe
United States Magistrate Judge